UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHARI LEE Z.,

               Plaintiff,

v.

ANDREW SAUL,[1]

               Defendant.

5:19-CV-0268
(GTS)

_____

APPEARANCES:

FOULKE LAW FIRM
  Counsel for Plaintiff
5 Court Street
Auburn, NY 13021

SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNSEL–REGION I
  Counsel for Defendant
625 JFK Building
15 New Sudbury Street
Boston, MA 02203

OF COUNSEL:

E. KENTON FOULKE, ESQ.

AMELIA STEWART, ESQ.
Special Assistant U.S. Attorney

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed by Shari Lee Z. ("Plaintiff") against the

Commissioner of Social Security, Andrew Saul ("Defendant") pursuant to 42 U.S.C. § 405(g),

---

[1] Plaintiff initially filed this action against Nancy Berryhill in her capacity as the Acting Commissioner of the Social Security Administration at the time Plaintiff filed her Complaint. (Dkt. No. 1 [Pl.'s Compl.].) However, Andrew Saul became the Commissioner of Social Security in June 2019. As a result, the Court finds that Commissioner Saul is automatically substituted for former Acting Commissioner Berryhill in this litigation. *See* Fed. R. Civ. P. 25(d) (stating that when a party in his or her official capacity ceases to hold the relevant office while an action is pending, "[t]he officer's successor is automatically substituted as a party"). The Clerk of Court is directed to update the caption to reflect this substitution.

are (1) Plaintiff's motion for judgment on the pleadings, and (2) Defendant's motion for judgment on the pleadings. (Dkt. Nos. 10, 14.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1968, making her 46 years old at her application filing date and 49 years old at the date of the ALJ's decision. Plaintiff reported having a high school education with a history of special education. Plaintiff alleges disability due to fibromyalgia, headaches, borderline personality disorder, osteopenia, osteoarthritis, acid reflux, obsessive compulsive disorder ("OCD"), panic attacks, anxiety attacks, depression, overactive bladder, back problems, high blood pressure, scoliosis, and sinus problems.

### B. Procedural History

Plaintiff applied for Supplemental Security Income on December 15, 2015. Plaintiff's application was initially denied on January 7, 2016, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a video hearing before ALJ Laureen Penn on February 14, 2018. On March 12, 2018, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 15-35.)[2] On February 1, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

---

[2] The Administrative Transcript is found at Dkt. No. 9. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

final decision of the Commissioner. (T. 1-3.)

    **C.**    **The ALJ's Decision**

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 18-35.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her application filing date. (T. 18.) Second, the ALJ found that Plaintiff's bilateral knee arthritis, fibromyalgia, osteoarthritis, degenerative disc disease, spondylosis, sacroiliitis, idiopathic scoliosis, lumbosacral radiculopathy, systemic lupus erythematosus, undifferentiated connective tissue disease, osteoporosis, degenerative joint disease, carpal tunnel syndrome, major depressive disorder, OCD, generalized anxiety disorder, post-traumatic stress disorder ("PTSD"), panic disorder without agoraphobia, and cognitive disorder are severe impairments. (*Id*.) Third, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 20-24.) Specifically, the ALJ considered Listings 1.02, 1.04, 11.14, 12.04, 12.06, 12.11, 12.15, 14.02, and 14.06. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 416.967(a) except she can lift and carry 10 pounds occasionally and 10 pounds frequently. She can stand and walk for three hours. She can sit for six hours. She can occasionally stoop, crouch, and kneel, and never crawl. She can occasionally climb stairs and ramps, but not climb ladders, ropes, or scaffolds. She can frequently handle and finger bilaterally. She can perform simple, routine, repetitive [tasks] in an environment with few, if any, workplace changes. She can occasionally interact with supervisors [and] coworkers, and can have incidental interaction with the public.

(T. 24.) Fifth, the ALJ found that Plaintiff is unable to perform her past relevant work. (T. 33.)

Sixth, the ALJ found that Plaintiff remains able to perform a significant number of sedentary jobs in the national economy, specifically as a document preparer, a toy stuffer, and an addresser. (T. 34.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefing on Their Motions

#### 1. Plaintiff's Motion for Judgment on the Pleadings

Generally, in her memorandum of law, Plaintiff asserts two arguments. (Dkt. No. 10, at 7-19 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because (a) that finding is based on her lay opinion, her selective consideration of the evidence, and her misinterpretation of the evidence, and (b) the ALJ erred in failing to afford controlling weight to the opinion from treating physician Martin Schaeffer, M.D., in that she failed to provide adequate reasons supported by the evidence for declining to adopt the limitations opined by Dr. Schaeffer. (*Id.* at 7-17.)

Second, Plaintiff argues that the ALJ erred in refusing to consider or accept evidence from the Brownell Center that was submitted two days before the hearing because (a) it resulted in the ALJ considering an opinion from Nurse Practitioner Melinda Myers without the benefit of her treatment records, and (b) it left the record incomplete such that the ALJ could not have rendered a sufficient decision without that evidence. (*Id.* at 17-19.)

#### 2. Defendant's Motion for Judgment on the Pleadings

Generally, in his memorandum of law, Defendant asserts two arguments. (Dkt. No. 14, at 3-18 [Def.'s Mem. of Law].) First, Defendant argues that the ALJ's RFC finding is supported by substantial evidence because (a) the ALJ properly and fairly considered and reconciled all of the evidence in the record when making that finding, and (b) the ALJ properly considered Dr.

Schaeffer's opinion and provided good reasons for declining to afford that opinion controlling weight or to accept all of the opined limitations. (*Id.* at 3-15.)

Second, Defendant argues that the ALJ was entitled to reject the late-submitted evidence from the Brownell Center because Plaintiff's counsel did not submit that evidence within the time period required by the regulations and did not offer any reason sufficient under the regulation to merit consideration of that evidence. (*Id.* at 15-18.) Defendant notes that the record does contain other treatment notes from the Brownell Center, and argues that the regulations allow for consideration of an otherwise "incomplete" record where the relevant evidence was not submitted within the time period required by law. (*Id.*)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe

impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### 1. Whether the ALJ's RFC Finding Is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 3-15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Plaintiff has attempted to poke holes in the ALJ's decision by honing in on specific statements and arguing why she believes those statements were erroneous, including statements that there was no objective evidence to support the reported severity of Plaintiff's back pain, that the MRI of her lumbar spine showed only mild-to-moderate changes, and that Plaintiff did not make ongoing complaints to providers about her back pain. (Dkt. No. 10, at 7-11 [Pl.'s Mem. of

Law].)  Plaintiff's various arguments are without merit.

Plaintiff first argues that "the ALJ reasoned that there was no objective evidence supporting the claimant's testimony of severe back pain." (Dkt. No. 10, at 8 [Pl.'s Mem. of Law].)  However, the ALJ did, in fact, note objective evidence supporting limitations from Plaintiff's back impairment and pain, but simply found that the objective evidence did not support the *degree* of limitation asserted by Plaintiff.  It is the ALJ's duty to make such determinations based on all the evidence, and the ALJ need not accept a claimant's reported subjective degree of limitation where such reports are not supported by the evidence.  *See* SSR 16-3p (noting that the ALJ must consider the effect of a claimant's symptoms on her ability to perform work-related functions, including assessing whether those symptoms are consistent with the objective medical and other evidence in the record).  The ALJ cited objective and other evidence of limitations and concluded that they limited Plaintiff to a range of sedentary work.  It is therefore clear that the ALJ appropriately considered the objective medical evidence related to Plaintiff's back impairment.  Additionally, even if Plaintiff can point to instances where she reported back pain to her providers to contradict the ALJ's finding that she did not make ongoing complaints to those providers of the symptoms to the degree alleged, the ALJ offered multiple other reasons, including the objective evidence and her reported daily activities, for finding that Plaintiff's symptoms were not as severe as she alleged.  To the extent that Plaintiff argues that the ALJ selectively reviewed the evidence to focus on only the evidence that supported her finding, the relevant legal standards do not require the ALJ to discuss all of the evidence, but rather only to show that her decision is supported by substantial evidence.  *See Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.) ("Although required

to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and [his] failure to cite specific evidence does not indicate that it was not considered."); *accord Clark v. Comm'r of Soc. Sec.*, 13-CV-0256, 2016 WL 1057047, at *5-6 (N.D.N.Y. Mar. 14, 2016) (Scullin, J.); *Fiorenza v. Comm'r of Soc. Sec.*, 16-CV-1255, 2017 WL 4443815, at *5 (N.D.N.Y. Oct. 4, 2017) (Suddaby, C.J.). Lastly, Plaintiff's argument that the ALJ's characterization of an MRI as showing mild-to-moderate degenerative changes was somehow contrary to the evidence is entirely without merit and, as Defendant argues, Plaintiff has not pointed to any way in which the ALJ's failure to specifically note findings such as disc herniation or mild nerve root impingement establishes that the ALJ did not consider those findings or that the ALJ's finding should have been different on the basis of this MRI; as already discussed, the ALJ need not discuss every piece of evidence to show that it was considered.

Plaintiff also argues that the ALJ erred in failing to afford controlling weight to Dr. Schaeffer's opinion and in failing to adopt the limitations contained in that opinion. (Dkt. No. 10, at 11-17 [Pl.'s Mem. of Law].) "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 [2d Cir. 2008]). However, in situations where the treating physician's opinion is not entitled to controlling weight, the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."

*Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 [2d Cir. 2013]). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (Carter, M.J.) report and recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (Suddaby, C.J.) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 [2d Cir. 2013]). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

As an initial matter, the Court rejects Plaintiff's argument that the ALJ was required to afford Dr. Schaeffer's opinion controlling weight because, as the ALJ found, it is not well-supported or consistent with the substantial evidence in the record. In affording only "some" weight to Dr. Schaeffer's opinion,[3] the ALJ stated that (a) his limitation for lifting and carrying up to five pounds was inconsistent with observations of only mild hand swelling and a minor decrease in grip strength, (b) his limitations for greatly reduced abilities to sit, stand, and walk were inconsistent with the moderate findings related to Plaintiff's knees, no ongoing findings of gait abnormality, and no observed use of an assistive device, (c) he failed to provide any rationale

---

[3] Dr. Schaeffer opined that Plaintiff could occasionally lift and carry up to five pounds, sit two hours total, stand or walk one hour total but did not require a cane to ambulate, occasionally reach, handle, finger, feel, push and pull bilaterally, occasionally operate foot controls bilaterally, occasionally perform postural activities, and occasionally be exposed to unprotected heights and moving mechanical parts, and operate a motor vehicle. (T. 646-51, 875-80.)

to support his findings related to manipulation, operation of foot controls, occasional exposure to hazards, or occasional posteral limitations (although the ALJ found that those postural limitations were supported by the overall record), and (d) his opinion was inconsistent with the conservative treatment history, the "at most moderate objective findings", and Plaintiff's own reported activities.[4]  (T. 31.)

The ALJ's decision therefore shows that she considered the relevant factors and provided good reasons supported by substantial evidence for the weight she afforded to Dr. Schaeffer's opinion.  In particular, it is well-established that "[i]nconsistency with the evidence can constitute a good reason for rejecting a treating physician's opinion." *LaFave v. Comm'r of Soc. Sec.*, 16-CV-0621, 2017 WL 4011264, at *5 (N.D.N.Y. Sept. 11, 2017) (Suddaby, C.J.) (citing *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 [2d Cir. 2007]; *Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 [N.D.N.Y. 2011]).  The medical treatment evidence as a whole shows that Plaintiff typically had a normal gait, some decreased range of spinal motion, tender points associated with

---

[4]  The Court notes that the ALJ only explicitly discussed and weighed Dr. Schaeffer's functional opinion from October 2016, despite the fact the record also contains a functional opinion from July 2017.  (T. 31, 875-80.)  However, the only substantial difference between these two opinions is the addition of a limitation to moderate noise in the July 2017 opinion; the rest of the limitations are completely identical.  (*Compare* T. 646-51 *with* T. 875-80.)  Given that Plaintiff has not alleged any problems dealing with noise levels, and that the ALJ appears to have rejected an identical limitation from a different source, the Court finds it appropriate to assume that the ALJ implicitly rejected the July 2017 opinion for all of the same reasons it rejected the October 2016 opinion, and finds that the ALJ's failure to explicitly discuss the July 2017 opinion is harmless error.  *See Fiducia v. Comm'r of Soc. Sec.*, 16-CV-1317, 2017 WL 4513405, at *4 (N.D.N.Y. Oct. 10, 2017) (Suddaby, C.J.) (collecting cases finding that failure to consider or weigh an opinion is harmless error where consideration of that opinion would not have changed the outcome).  The Court also notes that Plaintiff did not argue that the ALJ erred in failing to explicitly discuss the July 2017 opinion, or make any specific argument as to a limitation for dealing with noise levels or how such limitation would change the outcome of the ALJ's findings.

fibromyalgia, pain with palpation of her lumbar region, tenderness over her bilateral sacroiliac joints, in her knees and in her DIP and PIP finger joints, primarily normal reflexes and strength in her lower extremities, a positive right-sided straight-leg raising test, and some mild-to-moderate crepitus and effusion in her knees with limited range of motion in her right knee. (*See e.g.,* T. 551, 591, 611-12, 629-31, 667-68, 671-72, 676, 678-79, 684-85, 693, 704-05, 747-48, 752, 756, 761, 764, 768, 780, 784-85, 793-94, 798, 801-02, 815-16, 820-21, 828, 833, 837-38, 842-43, 848, 853, 858, 867, 869, 898-99, 935-36, 972-74, 986-88, 1001-02, 1007, 1021-23, 1032-33, 1042-45.) As the ALJ found, this evidence is inconsistent with the quite extreme limitations opined by Dr. Schaeffer. As a result, the ALJ's rejection of most of the limitations opined by Dr. Schaeffer is supported by both legally sufficient good reasons and substantial evidence. Plaintiff's various arguments on this matter are rejected.

Additionally, the ALJ's RFC finding is, as a general matter, supported by substantial evidence. Although the ALJ inadvisedly afforded "some weight" to all of the opinions in the record, it is clear from her explanations which opinions she relied on to a greater extent when formulating the RFC and which she found to be lacking. As to the functional opinions related to Plaintiff's physical impairments from the relevant time period, the ALJ made the following findings: (1) the opinion from consultative examiner Mohammed Zaman, M.D., was generally consistent with her complaints and the findings, but additional limitations were warranted in standing and walking due to subsequent treatment for her knee impairment;[5] (2) the opinion from treating physician Dr. Schaeffer was inconsistent with the objective evidence, her conservative

---

[5] On December 3, 2015, Dr. Zaman opined that Plaintiff had a mild limitation in walking, standing, and handling objects, and a moderate limitation in climbing, bending, lifting, carrying, kneeling, reaching, pulling, and pushing. (T. 585.)

treatment and her own reported activities, and he failed to provide clear rationale for the opined limitations; and (3) the opinion from treating rheumatologist Digant Nanavati, M.D.[6], was inconsistent with the objective medical findings and other evidence and her conservative treatment, and he failed to prove rationale for the opined limitations. (T. 30-32.) The ALJ also discussed the objective treatment notes in detail in a way that shows that her RFC finding is supported by substantial evidence. (T. 25-30.)

The Court notes that Plaintiff did not challenge the weight afforded to any of the opinions related to her mental functioning or argue that the mental RFC was unsupported, other than to argue that the ALJ lacked sufficient evidence to make a mental determination (an argument the Court rejects, as will be discussed below in Part III.2 of this Decision and Order). As a result, the Court states only that it finds that the ALJ's findings as to Plaintiff's mental functioning are supported by substantial evidence based on her consideration of the evidence as a whole and her appropriate weighing of the relevant opinion evidence.

For all of the above reasons, the Court finds that the ALJ's RFC finding is consistent with the applicable legal standards and supported by substantial evidence.

**2.      Whether the ALJ Properly Declined to Accept the Late-Submitted Records**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 15-18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

---

[6]      On August 14, 2017, Dr. Nanavati opined that Plaintiff could never lift or carry, could sit less 10-to-15 minutes total, stand less than 15 minutes total, walk less than 10 minutes total, needed to use a walker, could occasionally handle, finger and feel, but never reach, push or pull, never operate foot controls, occasionally climb stairs, never engage in other posturals, never be exposed to environmental conditions, and be exposed to only moderate noise. (T. 882-87.)

Section 1435 of Title 20 of the Code of Federal Regulations states that "[e]ach party must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence, as required in § 416.912, no later than 5 business days before the date of the scheduled hearing." 20 C.F.R. § 1435(a). If a party fails to comply with this requirement to submit all written evidence at least five days before the hearing, "the administrative law judge may decline to consider or obtain the evidence unless" (1) the agency's actions mislead the party, (2) the party had a physical, mental, educational, or linguistic limitation that prevented him or her from submitting the evidence, or (3) the party experienced an unusual, unexpected, or unavoidable circumstance that prevented him or her from submitting the evidence earlier, such as serious illness, the death or serious illness of an immediate family member, accidental destruction or damage to the records, or inability to obtain those records in the relevant time despite active and diligent searching. 20 C.F.R. § 416.1435(a)-(b).

In her decision, the ALJ explained that she declined to admit the evidence from the Brownell Center because Plaintiff's representative submitted it the day prior to the hearing "indicating that these had been in his files but had been missed previously," and this reason did not meet an exception in 20 C.F.R. § 416.1435(b). (T. 15.) The ALJ noted that the representative "should reasonably have been aware of the missing records given the absence of updated records in the file and his appointment to the case more than six months prior to the hearing." (*Id.*)

At the hearing, Plaintiff's representative attempted to explain his late submission of the relevant records, noting that, when he received the records, they did not include the therapy notes from NP Myers, so he wrote another letter to the provider to request those and intended to put all

of the records together to submit, but the provider never sent the therapy notes; it was not until he was reviewing the records from the Brownell Center that were already submitted that he realized the updated records had not been submitted, about which he stated, "I guess I overlooked it." (T. 44, 75-76.) The representative also stated, "I don't think I submitted the records that went up to 2015 but it made me think I did, and those would have been the complete records. But I don't think I'm the one that submitted those records up to 2015, I think that was put in by the Social Security Administration. So it was just a combination of unfortunate events." (T. 76.) In other words, Plaintiff's counsel saw records from the Brownell Center that had been submitted by the Social Security Administration and mistakenly believed that he had submitted the updated records.

The Court finds that the ALJ's determination that Plaintiff had not shown any of the exceptions in 20 C.F.R. § 416.1435(b) is consistent with the regulations and supported by substantial evidence. The representatives explanation makes it clear that he simply forgot to submit those updated records from the Brownell Center; such a mistake by a representative is not an unusual, unexpected, or unavoidable circumstance as contemplated by the regulation. Nor does his statement that the inclusion of older records from the Brownell Center made him think he submitted the updated records indicate that the Social Security Administration's actions in uploading those older files misled Plaintiff's counsel into believing the newer records had been submitted; a cursory glance at those older records would have revealed to him that they did not extend past 2015.

In making her argument, Plaintiff does not address whether the untimely submission meets the requirements of 20 C.F.R. § 416.1435(a) and (b), but rather focuses on whether failure

-15-

to admit these records made the administrative record incomplete. (Dkt. No. 10, at 17-19 [Pl.'s Mem. of Law].) However, the fact that the record might be incomplete without the late-submitted records from the Brownell Center does not require remand because, as this Court has noted previously, although there is a general duty on the ALJ to ensure a complete record before rendering a decision, the Social Security Administration specifically balanced that duty with the goal of the five-day rule, and "[t]o say that the ALJ was required to admit and consider this evidence despite the fact that it was not submitted in compliance with the five-day rule would make that rule an empty vessel that need not be complied with." *See Arthur L. v. Berryhill*, 18-CV-0304, 2019 WL 4395421, at *3-4 (N.D.N.Y. June 6, 2019) (Stewart, M.J.) (rejecting the same argument) report and recommendation adopted by 2019 WL 3213229 (N.D.N.Y. July 17, 2019) (Scullin, J.).

The circumstances of this case do not suggest that any different outcome is warranted. Plaintiff has been represented by her current counsel since June 23, 2017, which was approximately eight months before her hearing occurred, and thus counsel had plenty of time to obtain and submit mental health treatment records from the Brownell Center for the period after October 2015. (T. 236-38.) Additionally, the evidence in the record (excluding the relevant Brownell Center records) provides sufficient evidence from which the ALJ could assess Plaintiff's mental functioning; in addition to the opinion from NP Myers, the record contains a consultative examination and reports and examinations related to Plaintiff's mental health symptoms (particularly her anxiety) from her family physician and other providers. The Court therefore cannot say that the record is so insufficient that it rendered the ALJ incapable of making a determination without the ability to consider the more recent Brownell Center records.

As a result, in the absence of any sufficient reason for failing to timely submit those records, the Court finds that the ALJ was within her discretion under the regulations to refuse to consider the late-submitted evidence.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: December 16, 2019
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge